Good morning. May I please the court? My name is Megar Natalie Gayumi on behalf of Petitioner Gullam Reza Khavari on the petition for review of an immigration judge's removal order and Board of Immigration Appeals dismissal of the appeal. At issue, there are two issues in this case. The petitioner, the only witness in this case, and two is the removal order issued by the immigration judge. What was the second one? The second one is the removal order. Removal order, yes. Issued by the immigration judge. With regards to the first issue, we believe that there has been errors of law by the immigration judge as applying this standard of review for credibility under Shrestha V. Holder and Ren V. Holder decided by this court. Credibility standards are totality of circumstances standard. In the decision, there are some inconsistencies as to credibility finding by the immigration judge. Immigration judge first states that the petitioner's demeanor was generally earnest. She believes that he has shown plausible claim of asylum. She believes that the inconsistencies were not so severe as to make the claim frivolous or as to show that the petitioner was deliberately misleading the court or misrepresenting. Let me interrupt. You have an adverse credibility determination. I know you argued that it was not appropriately made. I don't want to necessarily suggest that I don't agree with you. I do agree with you, but I'm perhaps a little more interested right now in the removal aspect of this. That confuses me a little bit. Maybe you could perhaps talk to me a little bit about that. He was designated to return to Afghanistan, correct? Correct. And then there was a whole pecking order after that. I think Iran, Venezuela, Canada, whatever, right? Yes. How does that play out? Did you object to the fact that the order was to remove him to Afghanistan where regardless of the credibility issue, I assume he's at some sort of risk. Did you make any issue of that during the course of this proceeding? Not with regards to Afghanistan. So there's no issue here as to whether or not removal to Afghanistan is appropriate? Well, with regards to having that in the removal order, we believe that was one of the appropriate countries. We believe that he had shown plausible claim for asylum and he should not be removed. But if the court believes that... I get that. But if there's an adverse credibility determination, it doesn't have to have anything to do with Afghanistan. And as I understand the law, we still would have to support the determination, even if the credibility dealt with what he said about Iran or Venezuela. But it seemed to me that he's at some sort of risk nonetheless of being sent back to Afghanistan, even though he may not be entitled to asylum here. And I just was wondering how that plays out in the real world. Does he have any issue, if we do not agree with you, about returning to Afghanistan? And has that been an issue which was raised or preserved? Yes, Your Honor, we believe that it was raised. And we believe that even the immigration judge agrees that he has shown some plausible claim that he would that he has fear of returning to Afghanistan. It is not a safe country to be removed to. As to the alternative countries, we believe that those were not appropriately chosen to be included in the removal order. In our brief, we talked about the farm resettlement statute, and we explained that our view is that if there is no indication that the petitioner has legal status or some sort of permanent residency offer in any of those countries, then he should, then the immigration judge should not have included them in the removal order. Maybe I should ask your adversary the questions, but I'm concerned about how, I'm not familiar in that world, how these removal orders work. If the Afghanistan has to accept him, and there's a process, I guess, through the local process here that a request is made through the country whether you'll accept the person. Was that done here? How does that work out? Your Honor, the government, in fact, argued that under JAMA v. ICE by the Supreme Court, if a country does not accept him, if he was born or if he's a citizen of that country, we do not need acceptance of that country. Has this determination been made yet that Afghanistan will or will not accept him? It has not been. How does that process unravel? What exactly happens? My understanding is that after the removal order, government is in charge of contacting the government of the removal country and setting up. Is there any process where somebody can really challenge that determination at all, saying, look, I may not be entitled to asylum in the United States, but I don't want to go back to Afghanistan and here's why. Can that argument be made to any authority at all? I believe it can be. I don't believe that it has been raised after JAMA v. ICE when they determined that the country of birth is an appropriate country. But as to the alternative countries, there has been arguments made that... I'm curious as to what the process is, and I admit my ignorance. But I mean, when I read this record, I can understand the credibility determination. And it doesn't have to bear upon anything that he talked about in terms of Afghanistan, right? So he can't get asylum here. So he automatically goes back to Afghanistan, even though it seems to me that he may be at real risk there because he's a Hazari. I think it's legitimate that these people are persecuted. Relatives of his have been killed, apparently, and now he's a Christian. And I guess there's no question that he has produced his certificate that shows that he is a Christian at this present time. But I just wondered whether or not there's any process that really addresses that type of concern. And if you don't know the answer to that, I'll ask your adversary. I would believe that the government council knows the process of removal. I'm sure she knows more than I do. But you're not raising that issue here. He's not challenging going back to Afghanistan, is he? No, we are challenging the alternative countries. Well, but the alternative countries don't kick in unless Afghanistan rejects them, right? Correct. So in terms of the alternative countries, there's something about Canada here. And tell me a little bit about that. The immigration judge chose Canada simply on the designation of the petitioner who appeared pro se at the first hearing stating that he has a sister in Canada. There's no history that petitioner ever stepped into the country or sought any permanent residency in the country of Canada. But Canada was the last one on the list, right? Correct. So why is it that we're concerned about that? I mean, he's been properly designated to Afghanistan, apparently. And then after that was what, Iran, where his family is. He assumed he may want to see his family again sometime in his life. I don't know. And then after that, Venezuela, then Canada, right? Correct. So wasn't it done correctly by the judge? Our position is that because there is no offer of permanent residency in any of these countries, it is legally, it should not have been. I don't understand that argument, though. I understand it in terms of a firm resettlement claim, but that's not what's at issue here. The question really is whether there's another country that's willing to accept him, whether he was firmly resettled before that or not. And I'm not sure how you've raised an objection to that. You've complained about firm resettlement, but I think that's irrelevant. So where have you raised an objection that gives you an opportunity to say, if Canada will take him, I don't want to go to Canada and you can't make me? I mean, where is that argument made? Your Honor, we did, we compared it, because this is an asylum case, we compared it to the fact that the court, well, the court could have made a determination with the issue of firm resettlement. And it didn't? It did not. But that doesn't mean that you can escape the immigration judge and the BIA's determination that he's not qualified for asylum and it's up to the country to decide where to send him. And it's not up to the individual to say, well, you know, I don't really like things there very much. So I don't see where you've raised a legal objection to going to some other country. And I'm asking you, is there something in your brief that I've missed? Other than this firm resettlement, which I think is irrelevant, have you raised anything in your brief that really puts at issue the question of the possibility of him being sent to one of the alternative countries? No, Your Honor. There's no additional questions. Your time's up. You can still have a couple minutes for rebuttal. So how does it work? Okay. Good morning, Your Honors. May it please the Court. So this is how it works. First of all, the government would argue that Petitioner waived the alternative country's designation by not raising it. That may be correct. Okay. So how this works is, under 8 U.S.C. 1231, well, first let me get to the Supreme Court's case in JAMA, set out the four-step test. First, it's by choice. Well, Petitioner requested Canada. However, under 8 U.S.C. 1231 B-2 Big B, there's a limitation on Canada. So Canada is not even an option for Petitioner to be removed because it's a contiguous country and the statutes... But by asking for Canada, implicitly he didn't want to go back to Afghanistan. Well, how it works is, after choice, he chose Canada, and Canada is not an option. So then it goes to the second choice, which is citizen, which is Afghanistan. So then, number three is the lesser connection, which was Venezuela and Iran. Now, under 8 CFR 1240-12D, it says, when a respondent is ordered to remove from the United States, the immigration judge shall identify country or countries in the alternative. A little slower. Sorry. What happens is when you read from something, I used to do the same thing. I used to erase away what I read. Because I've read it so many times. Shall identify country or countries in the alternative to which the alien's removal may, in the first instance, be made pursuant to the provisions of 1241 B of the Act. In the event that DHS is unable to remove the alien to a specified or alternative countries, the order of the immigration judge does not limit the authority of DHS to remove the alien to any other country as permitted by the Act. So if Afghanistan won't take him, then DHS is allowed to remove him to Venezuela or Iran. So tell me when you find out whether Afghanistan will or will not take him. How does that process work? Once Department of Homeland Security has to get travel documents, because there is a stay in place in this case, DHS has not tried to get travel documents yet. Once travel documents are found, then we will find out whether Afghanistan will take him. The government will. So until this court's decision is made, then DHS reaches out to Afghanistan, finds out whether they'll take him. If they won't, then DHS is allowed to look at alternatives like Venezuela or Iran. So I'm concerned about the process. Is there a process in place where somebody like this person can say, look, even if I don't qualify for asylum, I don't want to go back to Afghanistan, and here's why. This may not have been raised in this case, but I just wonder, could it have been raised? Is there a process where that issue could have been raised before the IJ? If it was raised, the IJ's duty is to explore.  The immigration judge is required to go through and address each fear for each of those places, and the immigration judge in this case did. He addressed the fears. He did, but the issue was, well, I know he went through the statute, which you read. I get that. Yes. But, you know, was the issue ever raised? I don't want to go back to Afghanistan because, and I want you to consider that, even if I'm not entitled to asylum. He did address that. That was what the immigration judge discussed his fears. Where did that happen? Oh, that's the whole basis of Catholicism. Petitioner claims he doesn't want to return to Afghanistan because he's Catholic and of the Hazara. Right. And then the immigration judge discussed throughout the hearing his fears of returning to Afghanistan. So if the adverse credibility stands and he is entered, removed. When he discussed the fear, that dealt with the asylum issue, though, only, right? I guess there's such a thing in my mind that, you know, you don't qualify for asylum, but nonetheless I'm not going to order that you go back to Afghanistan. That's what I'm concerned about. The immigration, no, that is not within the immigration. That's not what they do. No. As soon as the immigration judge, and that's what that statute I just read, and I'm happy to give you the citation again. Is there a process where somebody can say, look, if I don't qualify for asylum, please do not send me back to Afghanistan. And here's why. Because it's implausible, because I'm at risk there. Don't qualify for asylum. I understand that. But nonetheless, is there a way of saying that, please, I don't want the discretion to be exercised by the United States to send me to Afghanistan. Is there a way of arguing that? No. Once the immigration judge reviewed that, reviewed all of his fears in Afghanistan, entered a removal order for Afghanistan, then it turns over to the Department of Homeland Security. He's stuck. There's no process like that. Not once. Let me interject here. I've been doing this a long time, and we have a lot of immigration cases. And I know there have been cases where circumstances wind up changing, because some of these cases take a long time. I recall years ago, for example, when Syria turned upside down and the U.S. government stopped sending people to Syria. So there are internal processes. I understand your answer to be that it's not going to help here, because in fact these issues about I'm a Christian and Afghanistan is bad for me really were aired, and the immigration judge in his adverse credibility determination basically set those arguments aside. But Afghanistan has changed further in the succeeding years, and indeed there's now a very real possibility the Taliban will become part of the government there. What process does DHS have to consider that possibility? So DHS, in the instance you gave with Syria, would stop removing aliens to Syria in a situation like that. However, I have reached out to DHS as recently as the beginning of this week, and they still are removing aliens to Afghanistan. That is their decision. Aliens, even if they are Hazaris and even if they are Christians, right? Well, they take just, it's a general. We are still removing aliens to the country, as Judge Clifton mentioned, like in a serious situation where they would stop removing to Syria. That is not the situation here. They are still removing to Afghanistan. So this is DHS's call, and it's not a matter for us at all to get involved in. No. Well, first of all, Petitioner waived it. So the government would say that this shouldn't even be considered. And then, as I mentioned in that regulation, as soon as the immigration judge chose those three options, the country does have to accept them. So Afghanistan under 1231b2 would have to accept them. And if not, then DHS could remove to either of the other. Well, Candie, that was my curiosity here, and I wanted to really have a chance to chat with you folks about how this process unfolds. And I appreciate your education. Thank you. Next, would anyone like to address the adverse credibility finding? Because obviously the demeanor of Petitioner, the immigration judge pointed out many problems. And just two things to mention. Petitioner raised the general earnest during direct comment. However, the immigration judge also said he was nonresponsive and cross and from questions from this court and found Petitioner's testimony baffling. The immigration judge also pointed out two major inconsistencies. It was Petitioner's burden to prove that the evidence compelled reversal of the agency's adverse credibility determination, which is the only issue properly before this court. Petitioner raises firm resettlement. However, the immigration judge specifically declined to address that issue because of the fatal adverse credibility determination. But all those adverse credibility decisions were based upon what he said about Venezuela and about Iran, nothing about Afghanistan. There was nothing in the record that says that he was not being truthful or debating Hazari or not being truthful or being a Christian. Well, the immigration judge did explore some issues with the Catholicism questions because Petitioner says he lived, converted in April 2014 in Venezuela, was there for a year and a half. However, he didn't have enough time to be baptized, went three weeks to Mexico, was suddenly baptized, and then submitted that as his corroborative document. So the adverse credibility determination is fatal to all three claims. It's fatal to his case as a whole. And if there's any other questions. I'll go ahead and raise what I think gave me pause. I think it may be giving Judge Block pause. But I understand how the law works. The adverse credibility determination is sort of an all or nothing. And he has reasons for saying, and in particular the conversion to Catholicism part, wasn't directly cited by him but certainly was held up for scrutiny. And there was a suggestion, I think, in the IJ's decision that, eh, I'm not so sure about that. The Hazari part is what gives me pause because that's basically recited as the reason that this individual left Afghanistan with his family at age five when he's not making the decisions for the family. Now, granted, he's the only witness, and so that's part of the same package with regard to credibility. But even people that aren't credible may be telling a story that has pieces that are true. And I don't know that the immigration judge ever grappled with the question of what happens to somebody, leaving aside the conversion to Catholicism,  and his family left a long time ago, that doesn't seem to be much in dispute. Is there any other thing for the agency to look at there? No, because like you mentioned, adverse credibility is fatal to all three claims, his claim for Venezuela, his claim for Iran. And to focus on the immigration judge cited a demeanor finding that would apply to him as a whole. In his non-responsive answers, the immigration judge provided, I counted almost 15 instances of problematic non-responsive testimony from petitioners. And to be honest, I really don't quarrel with that. But if he is Hazara, I do pause and say, well, what happens to somebody who maybe had been telling a story but faces a real problem if sent back to Afghanistan? There's no credibility issue about that. The immigration judge did not say that he's not credible about being a Hazari or that his family was killed. Any of that was considered. So I'm concerned about that, too, because if the adverse credibility determination focuses on what he said about Iran or baptism or Venezuela, I get it. And I guess under the law, that means that lights out. But there's no adverse credibility determination that was made, but maybe under the law it doesn't have to be made in terms of the fact that he has these problems in Afghanistan. It doesn't have to be made, Your Honors, and this Court has said it only needs one ground to support the substantial evidence. And it's outside the jurisdiction of this Court and in DHS's hands as to where he would go. It just strikes me that I understand the law, but intuitively it sounds like there's something conceptually troubling about that. But anyway, that's why we're here to talk about it.  Any further questions? Thank you. Thank you. You can have an extra couple minutes if you want. Thank you, Honor. With regards to the credibility issue, we disagree with the finding that the government stated that the immigration judge found the petitioner's demeanor not credible. In fact, the judge stated that he was generally earnest during the direct, and he did not, even with the non-responsiveness, he was not attempting to mislead the Court. Some of the concerns that the immigration judge had was, quote, unhelpfulness in filling out some gaps with regards to his belief with Catholicism, and at times narrative or monologue. These are terms that we don't believe. It shows that the witness or petitioner in this case was trying to mislead or evade answering questions with regards to credibility. And as far as the second issue, lastly, I would like to ask the Court to also consider practicality of applying alternative countries. Is there a limit to how many countries can be included in the removal order or designated by the petitioner? And is the government willing to contact each country to make sure that they accept the petitioner if there are no legal ties tying the petitioner to these countries? Great. Thank you. Thank you. The case has been submitted.
judges: Clifton, Block, Lee